UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-04297-KK-SSCx** | Date: | August 4, 2026 |
|---|---|---|---|

| Title: | ***Gevush Gabrielyan v. Markwayne Mullin et al.*** |
|---|---|

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order GRANTING Petitioner's Motion for a Preliminary Injunction [Dkt. 7]**

**I.
INTRODUCTION**

On July 30, 2026, petitioner Gevush Gabrielyan ("Petitioner"), who is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Markwayne Mullin, Todd Lyons, Todd Blanche, Andre Quinones, and Fereti Semaia ("Respondents").  ECF Docket No. ("Dkt.") 1, Petition ("Pet.").  On July 31, 2026, Petitioner filed an Ex Parte Application for a Temporary Restraining Order, which the Court converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 7, Motion ("Mot."); Dkt. 8

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Petitioner's Motion is **GRANTED**, and Respondents are **ORDERED TO IMMEDIATELY RELEASE** Petitioner Gevush Gabrielyan (A # 062-531-397) from custody.

**II.
BACKGROUND**

**A.    RELEVANT FACTS**

Petitioner is a citizen of Armenia.  Pet. ¶ 16.  On February 3, 2013, Petitioner was admitted to the United States.  Id.

Sometime between January 2021 and September 2023, Petitioner was placed into removal proceedings and charged with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  Id. ¶ 18.

On September 12, 2023, an immigration judge found Petitioner subject to removal and denied relief under the Convention Against Torture.  Id. ¶ 19.  On January 29, 2024, the Board of Immigration Appeals ("BIA") affirmed the immigration judge's determination.  Id. ¶ 20.  Petitioner proceeded to file a petition for review with the Ninth Circuit.  Id. ¶ 21.

On April 9, 2024, the immigration judge, upon agreement of the parties, released Petitioner from custody on a bond of $20,000.  Id. ¶ 22.  Petitioner routinely reported before immigration authorities as required by the April 9, 2024 release on an order of supervision.  Id. ¶¶ 22, 31.

On October 9, 2024, the BIA reopened Petitioner's appeal based on ineffective assistance of counsel, "finding that prior counsel had rendered constitutionally deficient performance in failing to appeal the immigration judge's adverse credibility finding in regard[] to the denial of protection under the Convention Against Torture."  Id. ¶ 23.  The BIA's order "stated that a new briefing schedule would be issued for the appeal."  Id.

On November 29, 2024, Petitioner married his spouse, who is a United States citizen.  Id. ¶ 24.

On December 10, 2024, the BIA dismissed Petitioner's appeal, noting no briefing had been filed.  Id. ¶ 25.

On January 2, 2025, Petitioner filed a motion to sua sponte reopen the appeal "because the [BIA] incorrectly docketed the briefing schedule and Petitioner did not receive proper notice of the briefing schedule from the [BIA]."  Id. ¶ 26.

On February 12, 2025, the BIA denied Petitioner's motion to reopen the appeal, "finding that even though the [BIA] erred in docketing the briefing schedule, Petitioner's counsel was properly notified of the deadline through the electronic filing system."  Id. ¶ 27.

On March 6, 2025, Petitioner filed a second motion to reopen based on prior counsel's failure to timely file a brief.  Id. ¶ 28.

On September 24, 2025, the Ninth Circuit dismissed the petition for review due to the October 9, 2024 interim order.  Id. ¶ 29.

On April 13, 2026, the Department of Homeland Security ("DHS") filed a new order of supervision for Petitioner.  Id. ¶ 30; Mot. at 16.  Petitioner reported to DHS as required on July 2, 2026.  Pet. ¶ 30.  His next date for a DHS check-in is set for September 16, 2026.  Id.

Nonetheless, on July 30, 2026, Petitioner was unexpectedly called to report to DHS.  Id. ¶ 33.  That day, Petitioner was detained by immigration authorities.  Id.

Petitioner's wife is due to give birth to their first child on August 17, 2026.  Id. ¶ 34.

///

**B.    PROCEDURAL HISTORY**

On July 30, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:**  Unlawful Re-detention in Violation of 8 U.S.C. § 1226(b);
2. **Ground Two:**  Due Process Violation of the Fifth Amendment to the U.S. Constitution ("Due Process Claim");
3. **Ground Three:**  Revocation of Release in Violation of 8 C.F.R. § 241.13(i)(2) and Due Process; and
4. **Ground Four:**  Revocation in Violation of 8 C.F.R. § 241.4(l) and Due Process.

Id. ¶¶ 35-55.

On July 31, 2026, Petitioner filed the instant Motion, seeking, on the basis of all four grounds of relief raised in the Petition, an order (1) requiring his immediate release from Respondents' custody on the same terms as his prior release, (2) barring his re-detention absent a pre-deprivation hearing before a neutral arbiter, and (3) requiring Respondents return any confiscated property and documents to Petitioner upon his release.  Mot. at 18.

On August 3, 2026, Respondents filed an Answer to the Petition and Response to the Motion, stating "Respondents are not presenting an opposition argument at this time."  Dkt. 10, Response ("Resp.").

On the same day, Petitioner filed a Reply.  Dkt. 11, Reply.

This matter, thus, stands submitted.

### III.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors").  See id. at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard."  Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other Winter factors are also met.  Id. at 1132.

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk mg for dc

### IV.
### THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

**A.    THE LIKELIHOOD OF SUCCESS ON THE MERITS**

The likelihood of success on the merits is the most important <u>Winter</u> factor, which "is especially true for constitutional claims." <u>Junior Sports Mags. Inc. v. Bonta</u>, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, Petitioner is likely to succeed on the merits of his Due Process Claim.[1]

**1.    Applicable Law**

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." <u>Id.</u> at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." <u>A.A.R.P. v. Trump</u>, 605 U.S. 91, 94 (2025) (citation modified) (quoting <u>Trump v. J.G.G.</u>, 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." <u>United States v. Rivera-Valdes</u>, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." <u>Shinault v. Hawks</u>, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976). <u>Yagman v. Garcetti</u>, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting <u>Shinault</u>, 782 F.3d at 1057). Under the <u>Mathews</u> test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." <u>Id.</u> (citation modified) (quoting <u>Shinault</u>, 782 F.3d at 1057).

**2.    Analysis**

Here, the Court finds Petitioner is likely to succeed on the merits of his claim that Respondents violated the Due Process Clause by re-detaining him without a pre-deprivation hearing.

First, Petitioner has a substantial private interest in remaining out of immigration custody. Petitioner was admitted into the United States in February of 2013, Pet. ¶ 16, placed into removal proceedings in September of 2023, and released from immigration authorities' custody in April of 2024, <u>id.</u> ¶¶ 19-22. Petitioner's April 2024 release gave rise to "the most elemental of liberty

---

[1] Because the Court finds Petitioner is entitled to relief based on his Due Process Claim, the Court need not consider Petitioner's other claims.

interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

Moreover, while ICE's initial decision to release Petitioner was discretionary, see 8 U.S.C. § 1226(a)(2), that decision contained an "implicit promise that [his release] will be revoked only if he fails to live up to the [release] conditions," Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For over two years, Petitioner relied on this promise to live freely in the community and "form the [] enduring attachments of normal life," including marrying his United States citizen spouse who is currently pregnant with their first child. Morrissey, 408 U.S. at 482; see also Pet. ¶¶ 24, 34. Thus, the length of Petitioner's release strengthens his interest in his continued freedom from detention. See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on bond, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community. See 8 C.F.R. § 236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"); Pet. ¶ 22. Moreover, Respondents "are not presenting an opposition argument at this time as to the Petitioner or [] Motion," which both seek Petitioner's immediate release. Resp. at 2. Further, Petitioner complied with the requirements of his prior release on an order of supervision. Pet. ¶¶ 22, 31. The uncontroverted evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). In contrast, without the procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention

"without any process").  Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents do not oppose releasing Petitioner, and the burden of a pre-detention hearing is low.  See Resp.  In fact, Respondents fail to provide any reason for Petitioner's re-detention.  See id.  Thus, Respondents lack any governmental interest in continuing to detain Petitioner.  See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).  Further, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue."  E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Regardless, custody hearings in immigration court are "routine" and impose only a "minimal" cost.  Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)).

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his re-detention violates his right to procedural due process, especially in light of Respondents' failure to challenge the merits of his argument.  Accordingly, the first Winter factor weighs in favor of Petitioner.

## B.    THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002).  If a plaintiff establishes a likelihood of success on a claim alleging a constitutional violation, "that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."  Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023).  Further, "[d]eprivation of physical liberty by detention constitutes irreparable harm."  Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994).  Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees.  Hernandez, 872 F.3d at 995.  "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis."  Id.

Here, as stated above, Respondents have violated Petitioner's right to procedural due process by re-detaining him without notice or a pre-detention hearing.  While detained, he is apart from his U.S. citizen wife who is expected to give birth to their daughter, and first child, imminently.  Pet. ¶ 34; Mot. at 16.  Hence, there can be no doubt Petitioner is – and will continue to be – irreparably harmed absent relief from this Court.  See, e.g., Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

///

## C.     BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the Immigration and Nationality Act).

Here, because Petitioner has demonstrated a likelihood of success on his Procedural Due Process Claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135.  In addition, Respondents do not asset any interest in continuing to detain Petitioner as part of their law enforcement obligations, see Resp; even so, such argument would not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\*     \*     \*

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to injunctive relief.  Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)).  Here, the last uncontested status is Petitioner's release before his current re-detention. See J.A.E.M., 812 F. Supp. 3d at 1072 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at \*3 (N.D. Cal. July 4, 2025))).  Accordingly, Petitioner's immediate release from ICE's custody is the appropriate form of relief. See Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

///

///

///

///

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.    Petitioner's Motion is **GRANTED**;[2]
2.    Respondents are **ORDERED TO IMMEDIATELY RELEASE** Petitioner Gevush Gabrielyan (A # 062-531-397) from their custody subject to the same conditions as his previous parole prior to re-detention;
3.    Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4.    Respondents are **ENJOINED** from re-detaining Petitioner pursuant to 8 U.S.C. § 1226(a) without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
5.    Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case;
6.    Respondents are **ORDERED** to file a status report **no later than two (2) days from the date of this Order,** regarding their compliance with this Order; and
7.    The parties shall file a stipulated order and judgment granting the Petition on the same grounds and under the same terms as this Order, with all appellate rights reserved.  If for any reason the parties cannot comply with this instruction, the parties shall file a joint status report no later than seven (7) days from the date of this Order explaining why.

This Order shall remain in effect until further order by the Court.  Failure to comply with this Order will result in sanctions.  Pursuant to General Order No. 05-07, further proceedings on the merits of the Petition are referred to the Magistrate Judge.  Any objections to Report and Recommendations issued by the Magistrate Judge shall be filed no later than three (3) days from the date of the Report and Recommendation.

**IT IS SO ORDERED**.

---

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'"  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public."  Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.